UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

NAOMI BOLES and SUSAN JAHNS,

        Plaintiff,
vs.

BOBCAT NORTH AMERICA, LLC,
d/b/a ORION WASTE SOLUTIONS,
BOBCAT DISPOSAL OF SARASOTA, LLC.,
RUSSO AND SONS, LLC, M&MR OPERATIONS,
INC. formerly RUSSO AND SONS, INC.,
MICHAEL RUSSO, and MARILYN RUSSO,

        Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiffs, NAOMI BOLES ("Ms. Boles") and SUSAN JAHNS ("Ms. Jahns"), by and through undersigned counsel, hereby file this Complaint and Demand for Jury Trial against Defendants, BOBCAT NORTH AMERICA, LLC, d/b/a ORION WASTE SOLUTIONS ("Bobcat North America"), BOBCAT DISPOSAL OF SARASOTA, LLC. ("Bobcat Disposal"), RUSSO AND SONS, LLC, M&MR OPERATIONS, INC. formerly RUSSO AND SONS, INC., MICHAEL RUSSO, and MARILYN RUSSO (collectively "Defendants"), and further state as follows:

**INTRODUCTION**

1.     This is an action under the Federal Fair Labor Standards Act, for failure to pay overtime wages in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et. seq.* (hereinafter "FLSA").

1

2. The FLSA prevents the exploitation of a class of workers who are in an unequal position with respect "to bargaining power and are thus relatively defenseless against the denial of a living wage is not only detrimental to their health and well being but casts a direct burden for their support upon the community. What these workers lose in wages the taxpayers are called upon to pay." *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 399 (1937)(Hughes, C.J).

3. **Defendants** utilized their unequal bargaining power to render defenseless Ms. Boles and Ms. Jahns against the denial of the living wage they are entitled to receive and that is protected by 29 U.S.C. § 207.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Orange County, Florida in the Orlando Division of the Middle District of Florida.

## THE PARTIES

6. The Defendants provide waste disposal services to the construction industry.

7. The Defendants provide dumpsters, portable bathrooms, grade crew services, and debris removal services in Florida and throughout the United States.

8. Prior to May of 2017, Michael Russo and Marilyn Russo operated Russo and Sons, Inc. independent and apart from the other Defendants.

9. In May of 2017, Bobcat North America acquired Russo and Sons, Inc. from Michael Russo and Marilyn Russo.

10. At that time, Bobcat North America formed Russo and Sons, LLC.

11. Russo and Sons, LLC now includes the assets and liabilities of Russo and Sons, Inc. (collectively referred to as "RSI").

12. Michael Russo and Marilyn Russo changed the name of Russo and Sons, Inc. to M&MR Operations, Inc.

13. Subsequent to May of 2017, Bobcat North America manages, oversees, and directs all aspects of Bobcat Disposal, RSI, and the enterprise as a whole.

14. Bobcat North America, Bobcat Disposal, and RSI are a single enterprise.

15. Bobcat North America, Bobcat Disposal, and RSI share the same officers and ownership.

16. Bobcat North America, Bobcat Disposal, and RSI share a unified operation and common control of the organization.

17. Bobcat North America houses the corporate officers, human resources, finance, accounting, technology, and administrators of the enterprise.

18. With respect to RSI and Bobcat Disposal, Bobcat North America:

    a. sets objectives and implements strategy;

    b. promotes the corporate brand;

    c. advertises and procures client contracts;

    d. hires and fires employees;

    e. supervises and controls employee work or conditions of employment;

    f. determines the rate and methods of payment; and

    g. maintains employment records.

19. Bobcat North America maintains and operates facilities throughout the United States including Wisconsin, Georgia, Arkansas and Florida.

20. Bobcat North America is headquartered in Sarasota, Florida.

21. Bobcat Disposal is the South Florida branch of the Defendants that rents and delivers roll off dumpsters and portable toilets to construction sites, and performs other waste disposal services for Defendants' clients in Sarasota, Florida and the surrounding communities.

22. Bobcat Disposal is also responsible for payroll services to other branches.

23. RSI remains the Central Florida branch of the Bobcat North America that rents and delivers roll off dumpsters and portable toilets to construction sites, and performs other waste disposal services for Defendants' clients in Ocoee, Florida and the surrounding communities.

24. At material times, MICHAEL RUSSO, in relation to Russo and Sons, Inc.:

    a. was an officer;

    b. was involved in the day-to-day operation; guided company policies;

    c. was actively engaged in the management, supervision, and oversight;

    d. controlled financial affairs;

    e. could authorize compliance with the FLSA and other laws; and,

  f. acted directly or indirectly in the interest of the employer in relation to its employees and was substantially in control of the terms and conditions of the employees' work.

25. At material times, MARILYN RUSSO, in relation to Russo and Sons, Inc.:

  a. was an officer;

  b. was involved in the day-to-day operation; guided company policies;

  c. was actively engaged in the management, supervision, and oversight;

  d. controlled financial affairs;

  e. could authorize compliance with the FLSA and other laws; and,

  f. acted directly or indirectly in the interest of the employer in relation to its employees and was substantially in control of the terms and conditions of the employees' work.

26. Ms. Boles is a citizen of Florida who worked for Michael Russo, Marilyn Russo, and Russo and Sons, Inc. until it was purchased by Bobcat North America in May of 2017.

27. Prior to May of 2017, Ms. Boles was paid for some but not all of the overtime wages owed to her.

28. After May of 2017, Ms. Boles worked for Bobcat North America, Bobcat Disposal, and RSI.

29. After May of 2017, Ms. Boles was paid for some but not all of the overtime wages owed to her.

30. Ms. Jahns is a citizen of Florida who worked for Michael Russo, Marilyn Russo, and Russo and Sons, Inc. until it was purchased by Bobcat North America in May of 2017.

31. Prior to May of 2017, Ms. Jahns was paid for some but not all of the overtime wages owed to her.

32. After May of 2017, Ms. Jahns worked for Bobcat North America, Bobcat Disposal, and RSI.

33. After May of 2017, Ms. Jahns was paid for some but not all of the overtime wages owed to her.

34. Ms. Boles and Ms. Jahns have retained LaBar & Adams, P.A. to represent them and have agreed to pay said firm a reasonable attorney's fee and costs for its services.

## FACTUAL ALLEGATIONS

35. Each Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

36. Defendants were joint employers within the meaning of the FLSA. For example, hourly employees drove or rode in trucks with logos and branding of RSI, were required to purchase and wear RSI uniforms, but were paid by Bobcat Disposal, and had their conditions of employment controlled by Bobcat North America.

37. Defendants have employees subject to the provisions of the FLSA, 29 U.S.C. § 207, in the facilities where Ms. Boles and Ms. Jahns performed work.

38. Defendants have employed two or more persons, including Ms. Boles and Ms. Jahns, "engaged in commerce or in the production of goods for commerce," or has "had employees handling, selling, or otherwise working on goods or materials that have

been moved in or produced for commerce by a person," as defined by 29 U.S.C. § 203(s)(1)(A)(i).

39. Ms. Boles and Ms. Jahns aver that at all times relevant to the violations of the Fair Labor Standards Act, the Defendants are an enterprise whose annual gross volume of sales made or business done was not less than $500,000, in accordance with 29 U.S.C. § 203(s)(1)(A)(ii).

40. At all times relevant to employment, Ms. Boles regularly used the instrumentalities of interstate commerce while performing work.

41. At all times relevant to employment, Ms. Boles also regularly used the channels of commerce while performing work.

42. At all times relevant to employment, Ms. Jahns regularly used the instrumentalities of interstate commerce while performing work.

43. At all times relevant to employment, Ms. Jahns also regularly used the channels of commerce while performing work.

44. Ms. Boles was employed as office personnel by Defendants from November 2014 to October 12, 2018, at its business located in Ocoee, Florida.

45. Throughout her employment, Ms. Boles was paid an hourly rate plus overtime for some but not all hours worked by Defendants.

46. Throughout her employment, Ms. Boles worked numerous workweeks where her hours exceeded forty but she was not paid time-and-a-half for each overtime hour worked.

47. Throughout her employment, Ms. Boles was routinely required to perform work off the clock for Defendants.

48. Throughout her employment, Ms. Boles was also subjected to Defendants' timesheet manipulation practice.

49. Defendants' regularly and routinely adjusted or manipulated Ms. Boles' timesheets in order to reduce overtime compensation.

50. Defendants were aware of the timesheet manipulation practice and of Ms. Boles performing work off the clock.

51. Throughout her employment, Ms. Boles was subjected to Defendants' automatic lunch break deduction policy where Defendants subtracted thirty minutes daily off her timesheets even though she did not take a lunch break or the lunch break was interrupted.

52. Despite knowing that meal breaks were not taken, Defendants automatically deducted thirty-minute meal breaks from Ms. Boles' timesheets.

53. Defendants knew or should have known that Ms. Boles was not taking a break for lunch.

54. Ms. Boles was not able to take a meal break and worked through lunch, but was not compensated for this time as a result of Defendants' policy.

55. Ms. Jahns was employed as office personnel by Defendants from November 18, 2013 to December 27, 2018, at its business located in Ocoee, Florida

56. Throughout her employment, Ms. Jahns was paid an hourly rate plus overtime for some but not all hours worked by Defendants.

57. Throughout her employment, Ms. Jahns worked numerous workweeks where her hours exceeded forty but she was not paid time-and-a-half for each overtime hour worked.

58. Throughout her employment, Ms. Jahns was routinely required to perform work off the clock for Defendants.

59. Throughout her employment, Ms. Jahns was also subjected to Defendants' timesheet manipulation practice.

60. Defendants' regularly and routinely adjusted or manipulated Ms. Jahns' timesheets in order to reduce overtime compensation.

61. Defendants were aware of the timesheet manipulation practice and of Ms. Jahns performing work off the clock.

62. Throughout her employment, Ms. Jahns was subjected to Defendants' automatic lunch break deduction policy where Defendants subtracted thirty minutes daily off her timesheets even though she did not take a lunch break or the lunch break was interrupted.

63. Despite knowing that meal breaks were not taken, Defendants automatically deducted thirty-minute meal breaks from Ms. Jahns' timesheets.

64. Defendants knew or should have known that Ms. Jahns was not taking a break for lunch.

65. Ms. Jahns was not able to take a meal break and worked through lunch, but was not compensated for this time as a result of Defendants' policy.

66. Michael Russo and Marilyn Russo had actual knowledge that employees, including Ms. Boles and Ms. Jahns, were working overtime without proper compensation.

67. Michael Russo and Marilyn Russo could have forced compliance with FLSA rules and regulations, but decided against complying with the FLSA.

## COUNT I
## VIOLATIONS OF THE OVERTIME PROVISION OF THE
## FAIR LABOR STANDARDS ACT

68. The allegations contained in paragraphs 1-67 above are realleged herein.

69. At all relevant times, Defendants repeatedly and willfully violated § 7 and § 15 of the FLSA by failing to compensate Ms. Boles at a rate not less than one and one-half times the regular rate at which she was employed for workweeks longer than forty (40) hours.

70. Specifically, Ms. Boles worked numerous weeks in excess of forty (40) hours a week, yet was not compensated for all work in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which she was employed.

71. At all relevant times, Defendants repeatedly and willfully violated § 7 and § 15 of the FLSA by failing to compensate Ms. Jahns at a rate not less than one and one-half times the regular rate at which she was employed for workweeks longer than forty (40) hours.

72. Specifically, Ms. Jahns worked numerous weeks in excess of forty (40) hours a week, yet was not compensated for all work in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which she was employed.

73. Defendants willfully failed to maintain and keep accurate time records as required by the Fair Labor Standards Act.

74. Defendants failed to post the required notice pursuant to the Fair Labor Standards Act.

WHEREFORE, Ms. Boles and Ms. Jahns demand judgment against Defendants, jointly and severally, for the following:

(a) Unpaid overtime wages found to be due and owing;

(b) An additional equal amount equal to the unpaid overtime wages found to be due and owing as liquidated damages;

(c) Prejudgment interest;

(d) A reasonable attorney's fee and costs; and,

(e) Such other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues contained herein this Complaint.

Respectfully submitted,

Dated: June 28, 2019

*/s/ N. Ryan LaBar, Esq.*
N. RYAN LABAR, ESQ.
Florida Bar No.: 0010535
Email: rlabar@labaradams.com
SCOTT C. ADAMS, ESQ.
Florida Bar No.: 0573442
Email: sadams@labaradams.com
LABAR & ADAMS, P.A.
2300 East Concord Street
Orlando, Florida 32803
(407) 835-8968 (phone)
(407) 835-8969 (facsimile)